## MOORE v. W. R. GRACE & CO.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1923.)

No. 2048.

1. Contracts ☞10(4)—Contract, stating "no arrival, no sale," held not to lack mutuality.

A contract to buy nitrate of soda, to be shipped from South America, containing the words "no arrival, no sale," *held* not to lack mutuality, as these words were intended to relieve buyer from liability for the nitrate of soda, if not delivered by seller in due performance of the contract from causes beyond seller's control.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Sales** ⬦**175—Buyer's anticipatory breach relieved seller of obligation to tender.**

Where seller was to analyze and ship nitrates, and buyer, prior to the time for seller's performance, refused to accept and pay for the nitrates, seller was relieved of the obligation to ship, analyze, and tender.

Cross Writs of Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by W. R. Grace & Co., a corporation, against D. Wallace Moore. Judgment for plaintiff for $14,928.30, and both parties bring error. Affirmed.

C. L. Prince, of Cheraw, S. C., and F. A. Miller, of Hartsville, S. C. (Miller & Lawson, of Hartsville, S. C., on the brief), for plaintiff in error.

D. D. McColl, of Bennettsville, S. C. (W. M. Stevenson, of Bennettsville, S. C., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and ROSE, District Judge.

WADDILL, Circuit Judge. The plaintiff in error was defendant in the lower court, and the defendant in error plaintiff, and the parties will hereinafter be referred to as plaintiff and defendant as in their original capacities.

The action was instituted to recover damages for the alleged breach by the defendant of two certain contracts dated June 18, 1920, whereby the defendant agreed with the plaintiff to purchase 1,000,000 pounds of nitrate of soda at the price of $4.15 per cwt., f. o. b. cars, net weight, Charleston, S. C., ex vessel or ex store, analysis on arrival to be 95 per cent. of nitrate of soda as per sample drawn at the time of shipment, Stillwell & Gladdings analysis; if inferior, buyer to have the benefit of the usual West Coast allowance; deliveries to be 100,000 pounds in January, February, March, May, and June, 1921, and 500,000 pounds in April, 1921, in tons of 2,240 pounds, gross weight delivery, less tare seven-tenths of 1 per cent.; terms net cash payable draft attached to bill of lading. Shipments were to arrive from the West Coast of South America during the months mentioned; "no arrival, no sale." The contract contained many other clauses, not, however, necessary to the consideration and determination of this case.

Plaintiff avers that the defendant breached said contracts, failed and refused to accept deliveries of the nitrates at the times specified, and as a consequence plaintiff had been damaged to the extent of the difference between the contract price and the market price of the nitrates in question, with interest from the date of the breach. Plaintiff further averred it was the owner of the nitrate of soda when sold; that the sales were bona fide entered into, and actual deliveries contemplated; and that the defendant wholly repudiated the contracts in advance of the times of delivery thereunder.

Defendant denied that the plaintiff owned the nitrate of soda when sold; that actual sales and deliveries were contemplated, and, on the

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contrary, that the contracts were speculative in character, and in violation of the laws of South Carolina; and, further, that the contracts were void for want of mutuality.

Issue was joined between the parties, a jury impaneled, and evidence adduced, documentary and oral, from which it appeared that the defendant before the first delivery under the agreements of sale, wholly repudiated the contracts, and insisted upon their cancellation, because of his inability to carry out the same, and make the payments thereunder. It further appeared that the plaintiff was the owner of the nitrate of soda, that due notice of partial shipments had been given, and that the contracts were bona fide entered into for the purchase and delivery of the nitrate of soda, and not for speculative purposes.

Thereupon each side, at the conclusion of the testimony, moved the court for an instructed verdict; the defendant accompanying his motion with a request to have the question of intent submitted to the jury in the event of the failure of his motion. The court overruled the defendant's motion, and instructed a verdict in favor of the plaintiff in the sum of $14,928.30, with costs, to which action of the court each side excepted—the defendant because of the court's finding of facts against him, the refusal to submit the question of intent to the jury, and in entering the judgment as aforesaid. Plaintiff excepted because of the court's failure to award interest on the judgment from the date of the breach of the contracts. Each party presented assignments of error embodying their exceptions, which will be considered in the order named.

First. Was there error in instructing a verdict against the defendant? Manifestly there was not, upon the evidence adduced. The defendant qualified his motion, making it dependent upon succeeding therein, and, if denied, then to have the question of intent left to the jury. The court passed upon the motion for an instructed verdict, in the light of both parties having made such a request. While the right to accompany a motion for an instructed verdict with special prayers predicated upon the defeat of the first motion may be conceded, still, had the defendant made no motion, it would have been the duty of the court upon the plaintiff's request alone, under the facts of this case, to have instructed a verdict in its favor. Authorities determining the effect of a motion for an instructed verdict, when made by both parties, are abundant. Buetell v. Magone, 157 U. S. 155, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State, etc., v. Atchison Ry. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Williams v. Vreeland, 250 U. S. 295, 298, 39 Sup. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Holbrook v. Shepard (C. C. A.) 279 Fed. 193, 195, and cases cited.

[1] Second. The defendant's assignment of error because of lack of mutuality in the agreements between the parties, arising from the use of the language in connection with the shipment, of "no arrival, no sale," is equally without merit. The meaning of these words in a contract of this sort has been determined by the Supreme Court, and other federal decisions, and afford no support for the contention here made. Harrison v. Fortlage, 161 U. S. 57, 63, 16 Sup. Ct. 488, 40 L.

Ed. 616; Pottash Bros. v. Herman Reach & Co. (C. C. A.) 272 Fed. 658, 661. Obviously the language in question was intended to relieve the vendee from liability for the nitrate of soda, if not delivered by the vendor in due performance of the contract, from causes beyond its control, and it could not serve as a defense under the facts in this case, where the vendee openly and wholly abandoned his contracts in advance of the time of the performance of the same. To allow the vendee under the facts here to avail himself of the attempted defense would make it only necessary for him to decline to perform the contract, and thereby escape all liability and responsibility thereunder.

[2] Third. After careful consideration of the testimony, we are convinced that the lower court was correct in its interpretation of the contracts in suit; that they were bilateral and mutual, binding the parties to fulfill reciprocal obligations, one to furnish the nitrate of soda, and the other to take it and pay therefor, and that actual delivery of the nitrate was contemplated by the vendor, and a like acceptance thereof by the vendee. The contracts having been clearly breached by the vendee in advance of the time of the performance by the vendor, by the former's positive refusal to accept and pay for the nitrates, the vendor was relieved of the obligation to ship, analyze and tender the same. Parker v. Moore (C. C. A. 4th Circuit) 115 Fed. 799, 53 C. C. A. 369; Springs & Co. v. Carpenter, 154 Fed. 487, 83 C. C. A. 327; Sprunt v. Hurst, etc. (C. C.) 180 Fed. 782; 23 R. C. L. 14–16; 13 C. J. 334.

Fourth. Respecting the cross-assignment of error, made by the defendant in error to the failure of the court to instruct for interest from the date of the breach of the contract, no action is taken thereon; the defendant in error declining to press the same.

It follows, from what has been said, that the judgment of the lower court in favor of the defendant in error should be affirmed, with costs.

Affirmed.